UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

RYAN O'DELL,                                    :
                                                :
            Plaintiff,                          :    Civil Action No. 22-cv-5717
                                                :
v.                                              :    **COMPLAINT FOR VIOLATIONS OF**
                                                :    **SECTIONS 14(a) AND 20(a) OF THE**
BLACK KNIGHT, INC., ANTHONY                     :    **SECURITIES EXCHANGE ACT OF**
JABBOUR, CATHERINE L. BURKE,                    :    **1934**
THOMAS M. HAGERTY, DAVID K. HUNT,               :
JOSEPH M. OTTING, GANESH B. RAO,                :    **JURY TRIAL DEMANDED**
JOHN D. ROOD, and NANCY L. SHANIK,              :
                                                :
            Defendants.                         :
-----------------------------------------------------------   :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Black Knight, Inc., ("Black Knight or

the "Company") the members Black Knight's board of directors (the "Board" or the "Individual

Defendants"), and Intercontinental Exchange, Inc. and affiliates ("ICE" and collectively with the

Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9,

17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between

Black Knight and ICE.

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on June 17, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sand Merger Sub, Inc., a wholly owned subsidiary of ICE ("Merger Sub"), will merge with and into Black Knight with Black Knight surviving as a wholly owned subsidiary of ICE (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 4, 2022 (the "Merger Agreement"), each Black Knight stockholder will receive (i) $68.00 in cash plus (ii) 0.1440 multiplied by a 10-day average of the volume weighted averages of the trading prices of ICE common stock price (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 4% of ICE common stock outstanding and ICE shareholders will own 96% of ICE common stock.

3.      As discussed below, Defendants have asked Black Knight's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Black Knight's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Black Knight stocks

and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Anthony Jabbour has served as a member of the Board since

May 2018 and is the Company's Chief Executive Officer and Executive Chairman of the Board.

11.     Individual Defendant Catherine L. Burke has served as a member of the Board since

October 2020.

12.     Individual Defendant Thomas M. Hagerty has served as a member of the Board

since December 2014.

13.     Individual Defendant David J. Hunt has served as a member of the Board since

December 2014.

14.     Individual Defendant Joseph M. Otting has served as a member of the Board since June 2020.

15.     Individual Defendant Ganesh B. Rao has served as a member of the Board since December 2014.

16.     Individual Defendant John D. Rood has served as a member of the Board since July December 2014.

17.     Individual Defendant Nancy L. Shanik has served as a member of the Board since December 2019.

18.     Defendant Black Knight is a Delaware corporation and maintains its principal offices at 601 Riverside Avenue. Jacksonville, FL 32204.  The Company's stock trades on the New York Stock Exchange under the symbol "BKI."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.      **The Proposed Transaction**

21.     Black Knight provides integrated software, data, and analytics solutions in North America and Internationally. The Software Solutions segment offers software and hosting solutions comprising MSP, a software as a service application platform for mortgage, home equity loans, and lines of credit; Servicing Digital, a web and mobile solution for consumers that provides easy access to customized timely information about their mortgages; Loss Mitigation, an integrated solution that supports retention and liquidation workouts; and Empower, a loan origination system used by lenders to originate mortgages, home equity loans, and HELOCs. This segment also

provides LoanCatcher, a cloud-based loan origination system designed for the needs of brokers;

and LoanSifter PPE designed to meet the needs of the broker community by providing access to

investors and loan products. The Data and Analytics segment offers property ownership data, lien

data, servicing data, automated valuation models, collateral risk scores, behavioral models, lead

generation, multiple listing service, and other data solutions. The Company was formerly known

as Black Knight Financial Services, Inc. and changed its name to Black Knight, Inc. in October

2017. Black Knight was founded in 2013 and is headquartered in Jacksonville, Florida.

22.     On May 4, 2022, the Company and ICE jointly announced the Proposed

Transaction:

> ATLANTA, NEW YORK & JACKSONVILLE, Fla.--(BUSINESS
> WIRE)-- Intercontinental Exchange, Inc. (NYSE: ICE), a leading
> global provider of data, technology, and market infrastructure, today
> announced it has entered into a definitive agreement to acquire
> Black Knight, Inc. (NYSE: BKI), a software, data and analytics
> company that serves the housing finance continuum, including real
> estate data, mortgage lending and servicing, as well as the secondary
> markets. The cash and stock transaction values Black Knight at $85
> per share, or a market value of $13.1 billion, and builds on ICE's
> position as a provider of end-to-end electronic workflow solutions
> for the rapidly evolving U.S. residential mortgage industry.
>
> The definitive agreement has been unanimously approved by the
> Boards of Directors of both companies.
>
> Black Knight, based in Jacksonville, Florida, has approximately
> 6,500 employees and is a long-time driver of innovation in the
> mortgage industry. The company provides a comprehensive and
> integrated ecosystem of software, data, and analytics solutions
> serving the real estate and housing finance markets. The Black
> Knight ecosystem adds value for clients of all sizes across the
> mortgage and real estate lifecycles by helping organizations lower
> costs, increase efficiencies, grow their businesses, and reduce risk.
>
> The addition of Black Knight's technology solutions, real estate and
> mortgage-related data assets, leading analytics, and its team of
> mortgage and technology professionals complements and
> strengthens ICE's rapidly growing mortgage technology business.
> The combination will result in improvements in the mortgage

lending process for borrowers and lenders by increasing automation and efficiencies that lower the cost of obtaining a mortgage, while harnessing data that can help current homeowners lower their monthly payments and lessen the likelihood of default.

"Since our founding in 2000, ICE's simple mission has been to make analog and opaque financial transactions more digital and transparent, beginning with commodity markets, extending across a large array of asset classes, and most recently working to help streamline the mortgage industry," said Jeffrey C. Sprecher, Founder, Chair and CEO of Intercontinental Exchange. "Black Knight shares our passion for leveraging technology to serve customers and households, and, with our expertise in operating networks and marketplaces, our planned acquisition will bring to life a true end-to-end solution for the mortgage manufacturing and servicing ecosystem, benefitting aspiring and current homeowners across the United States."

"Black Knight has been on a successful journey to transform the mortgage industry by providing our clients with powerful, interconnected solutions that help them achieve greater efficiency and better serve their customers," said Anthony M. Jabbour, Chairman and CEO of Black Knight, Inc. "We believe this combination is the right next step in that journey. Black Knight and ICE share a common vision and commitment to deliver a better experience for our clients and the stakeholders we serve, and to ultimately streamline the homeownership process. By combining our expertise, we can deliver significant benefits to our clients and consumers by improving and streamlining the process of finding a home, as well as obtaining and managing a mortgage."

"This transaction will benefit ICE, Black Knight, and our collective shareholders," said Warren Gardiner, Chief Financial Officer of Intercontinental Exchange. "Black Knight's high-growth, recurring revenue stream will further complement our 'all weather' business model, while the strength of ICE's balance sheet, and our combined cash flows, position this transaction to be accretive to adjusted earnings per share[1] in the first full year."
The transaction is expected to close in the first half of 2023, following the receipt of regulatory approvals, Black Knight stockholder approval, and the satisfaction of customary closing conditions.

**Key Financial Metrics:**

- Transaction valued at $85 per share, or a total market value of $13.1 billion, with consideration in the form of a mix of cash (80%) and stock (20%).
- Cash consideration of $10.5 billion expected to be funded with newly issued debt and cash on hand at the time of close.
- Stock consideration valued at approximately $2.6 billon based on ICE 10-day VWAP as of May 2, 2022 of $118.09.
- Black Knight shareholders can elect to receive either cash or stock, subject to proration, with the value of the cash election and the stock election equalized at closing.
- Enterprise value of approximately $16 billion represents ~15x fully synergized 2022 Black Knight adjusted EBITDA[2].
- Expect to realize cost synergies of $200 million, with one-third realized by year one, two-thirds by year three, and full synergies realized by year five.
- Expect to realize revenue synergies, net of related costs, of approximately $125 million by year five.
- Expected Black Knight transaction IRR of 10%
- Expect that the acquisition of Black Knight will be accretive to adjusted EPS[1] in the first full year post-close.
- Transaction expected to close in the first half of 2023, subject to satisfaction of customary conditions including receipt of Black Knight stockholder approval and Hart-Scott-Rodino (HSR) review and clearance.

Goldman Sachs and Co., LLC and Wells Fargo Securities, LLC are serving as lead financial advisors to Intercontinental Exchange, and Shearman & Sterling LLP and Morgan Lewis & Bockius LLP are serving as legal advisors to Intercontinental Exchange. J.P. Morgan Securities LLC is serving as the exclusive financial advisor to Black Knight and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Black Knight.

\* \* \*

23.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Black Knight's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.     **The Materially Incomplete and Misleading Registration Statement**

24.     On June 17, 2022, Black Knight and ICE jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by J.P. Morgan in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management of ICE and Black Knight prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate

management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2022 through 2026: Adjusted EBITDA, and Adjusted EPS, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

30.     As for ICE, the Registration Statement completely fails to disclose any prospective financial information. This information is material since Black Knight shareholders will be receiving ICE stock for their Black Knight shares.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Black Knight*

31.     With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable companies selected by J.P. Morgan for the analysis.

32.     With respect to J.P. Morgan's *Transaction Multiples Analysis*, the Registration Statement fails to disclose the metrics and the multiples of the selected comparable transactions selected by J.P. Morgan for the analysis.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values of the Company at the end of fiscal year 2026; (ii) the Company's unlevered terminal free cash flows and the line items used to calculate the cash flows; (iii) the inputs and assumptions underlying the range of perpetuity growth rates ranging from 2.75% to 3.25%; (iv) the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25% for Black Knight; (v) the Company's weighted average cost of capital; (vi) the amount of fully diluted number of shares of Company common stock; and (vii) the net debt of the Company as of December 31, 2021.

34.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Black Knight within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Black Knight, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Black Knight, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Black Knight, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

45.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 5, 2022

**MELWANI & CHAN LLP**

By: _/s/ Gloria Kui Melwani_
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

_Attorneys for Plaintiff_

15